C. F. HARMS CO. v. BROOKLYN ASH REMOVAL CO. et al.

BROOKLYN ASH REMOVAL CO. v. C. F. HARMS CO.

(District Court, E. D. New York. April 22, 1919.)

SHIPPING ☞54—CHARTER—SINKING OF SCOW—LIABILITY.

 Where a scow, which was being used by the charterer to remove refuse from a city, capsized while loading, and the charterer was compelled to incur expense in removing refuse from the berth where the scow capsized, *held*, that the scow and its captain were at fault, and that neither the charterer nor the city, whose ash cars were dumped therein, were at fault; the accident being caused by the want of care by the captain and leak in the scow which caused it to list and ultimately to capsize.

In Admiralty. Libel by the C. F. Harms Company against the Brooklyn Ash Removal Company, which by petition brought in the City of New York, together with a libel by the Brooklyn Ash Removal Company against the C. F. Harms Company. Libel of C. F. Harms Company dismissed, and decree rendered against it on second libel.

Macklin, Brown & Purdy, of New York City, for Harms Co.
Alexander & Ash, of New York City, for Ash Removal Co.
William P. Burr and Mr. Carroll, both of New York City, for City.

GARVIN, District Judge. C. F. Harms Company, owner of the scow W. F. Harms, has filed a libel against the Brooklyn Ash Removal Company. The latter company answered, and brought in by petition the city of New York. A second libel was also brought by the Brooklyn Ash Removal Company against the C. F. Harms Company, and these actions have been tried together.

The libel of C. F. Harms Company claims damages sustained by its scow W. F. Harms, which capsized on December 2, 1917, while lying at the dumping board at the foot of Twenty-Seventh street, Brooklyn. The libel of the Brooklyn Ash Removal Company, Incorporated, claims damages by reason of the expense which it incurred in removing refuse from the berth at the foot of Twenty-Seventh street, there deposited when the scow capsized, and for injury to the structure on the dump at the place of the accident.

The Harms Company chartered the W. F. Harms to the Ash Removal Company; the charter providing in part as follows:

"Second. We will furnish a captain for each scow at our own expense, who will be under your control and orders; but you are not to be responsible for the acts of any captain in the care, movement, or navigation of said scows, and we will save you harmless and defend you from any claims, actions, or suits arising therefrom.

"Third. We will keep the scows in repair and in seaworthy condition, and will furnish and maintain lines, anchors, and all equipment necessary for the work in which the scow is engaged.

"Fourth. You will be responsible for all repairs of damage done to scows in loading and unloading, where such damage is caused by the negligence of your employés or the imperfection of your machinery or appliances. In case of damage to scows in tow, or by another vessel, the towboat or vessel at fault and its owners shall alone be held responsible. You are not to be

held responsible for damage done by ice, storm, fire, the elements, the act of God, or causes beyond your control, or for repairs that are due to the ordinary use, wear, and tear of the scows."

Late in November, 1917, the W. F. Harms went to the foot of Twenty-Seventh street, Brooklyn, in charge of her captain, Frank Catapano. A careful reading of his testimony satisfies me that while the loading was going on the scow was moored close to the dock, projecting out from the dock into the berth, about 11 feet above which is a dumping board, upon which ash carts of the city of New York are backed and discharge their loads upon the scow below. The contents of these ash carts fall some 10 or 15 feet through the air, and, if the scow is properly moored, are dumped in the center of the scow. The Harms Company claims that the scow was not moored close to the dock; that as a result ashes were piled in quantity upon the side nearer the dock, which caused her to capsize; that the Ash Removal Company was negligent in failing to remove obstructions which were in the water between the scow and the dock, and in failing to properly trim the cargo. These are the real acts of negligence urged.

The Ash Removal Company claims that the scow, as she was loaded with ashes and went lower into the water, began to leak on the side next to the pier, which was caused by her unseaworthy condition, and by reason of the breach of the agreement on the part of the Harms Company to keep her in repair and in a seaworthy condition, and by a further breach of such agreement by Harms Company, in that the captain of the scow failed to properly care for, move, or navigate the scow, having left her unattended shortly before she capsized. The Ash Removal Company, as against the city of New York, claims that if it be established, as contended by Harms Company, that the accident was caused by failure to remove articles from the water between the scow and the dock, or by ashes being dumped upon the scow in such manner as to cause her to list and capsize, the city of New York is responsible, because that would be caused by the negligence of the employés of the city.

Some testimony was given at the trial of a conversation in which Mr. McKenzie, who was acting for the Harms Company, participated, and during which it is claimed on behalf of the Ash Removal Company that he recognized the liability of the Harms Company. I am of the opinion that the testimony does not justify a conclusion that he in any way admitted liability on the part of Harms Company, and in the determination of these actions I shall give that conversation no consideration whatever.

It seems to me that the testimony of the captain of the scow, which was offered by the Harms Company, may be taken to establish that while the scow was in the process of being loaded she was moored close to the dock. During the night and at other times, to allow for the rise and fall of the tide, and when loading was not going on, her lines were doubtless slackened. I do not find that the city is in any way at fault. I am of the opinion that the record establishes that the scow capsized because, as she loaded and settled in the water, she began to leak, which caused her to list and resulted in her being upset.

I cannot credit the testimony of the captain that there was no water in her, and in view of the fact that she listed when he left her for the night, as he explains it, to see his sick child, I am of the opinion that he did not give the scow the care which under the charter he was required to exercise.

The libel of the Harms Company is therefore dismissed. In the case brought by the Ash Removal Company there will be a decree for the libelant.